```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA
                              CASE NO. 09-Cv-22646-COHN
                                   (08-Cr-20685-COHN)
                              MAGISTRATE JUDGE P. A. WHITE
```

VERTELIO DE LA ROSA,         :

        Movant,              :

v.                           :                REPORT OF
                                          MAGISTRATE JUDGE
UNITED STATES OF AMERICA, :

        Respondent.          :

_____

I.  Introduction

This matter is before this Court on Vertilio De La Rosa's motion to vacate pursuant to 28 U.S.C. §2255, attacking his conviction and sentence for making a false statement on an application for a United States Passport in violation of 18 U.S.C. §1542, aggravated identity theft in violation of 18 U.S.C. §1028A(a)(1), and illegal re-entry in violation of 8 U.S.C. §1326(a), entered following a guilty plea in case no. 08-Cr-20685-Cohn.

The Court has reviewed the motion (Cv-DE# 1); the government's answer to the complaint (Cv-DE# 6); De La Rosa's reply (Cv-DE# 7), second reply (Cv-DE# 8), and motion for summary judgment (Cv-DE# 10); the government's response in opposition to the motion for summary judgment (Cv-DE# 12); De La Rosa's reply to the response (Cv DE# 13); De La Rosa's motion requesting a declaratory judgment in his favor[1] (Cv DE# 14), the Presentence Investigation Report

_____

[1] The Undersigned disposed of De La Rosa's motion for summary judgment and motion for declaratory relief by separate paperless order wherein the Undersigned construed these motions as supplemental replies to the government's response. (Cv DE# 19, 20).

(PSI); and all pertinent portions of the underlying criminal file.

Construing the arguments liberally as afforded pro se litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the movant asserts ineffective assistance of counsel for

**Claims 1 and 2**: Failing to move for a downward departure to offset the additional time he will serve in order for the government to process his deportation and due to the harsh conditions of confinement to which he was subjected as a deportable alien.

**Claim 3**: Failing to argue that De La Rosa did not commit aggravated identity theft under 18 U.S.C. §1028(a)(1) and the Supreme Court's interpretation of this statute in Flores-Figueroa v. U.S., 129 S.Ct. 1886 (2009), because De La Rosa lacked the requisite knowledge.

**Claim 4**: Failing to object to the 12-level increase in his offense level under U.S.S.G. §2L1.2(b)(1)(B) as, contrary to the PSI's assertion, De La Rosa had not been previously convicted of a drug trafficking offense.

**Claim 5**: Failing to negotiate an additional one level decrease in the total offense level under U.S.S.G. §3E1.1(b) and for failing to argue that the government breached the plea agreement by failing to file a motion for this one level decrease, pursuant to §5K1.1 or Fed. R. Crim. Pro. 35, based on the movant's substantial assistance.

**Claim 6**: Failing to move to dismiss the indictment on the grounds that the deportation order which formed the basis for his violation of 8 U.S.C. §1326 was invalid.

**Claim 7**: Failing to argue at the sentencing hearing for a two-level decrease as he was entitled to a "safety valve" adjustment under 18 U.S.C. §3553(f).

## II.   Facts and Procedural History

De La Rosa was charged by indictment with making a false

statement on an application for a United States Passport in violation of 18 U.S.C. §1542 (count 1), falsely representing himself to be a United States citizen in violation of 18 U.S.C. §911 (count 2); making a false statement in writing to a government agency in violation of 18 U.S.C. §1001(a)(2) (count 3); aggravated identity theft in violation of 18 U.S.C. §1028A(a)(1)(count 4); and illegal re-entry in violation of 8 U.S.C. §1326(a) (count 5). (Cr-DE# 8).

De La Rosa entered a written plea agreement under which he agreed to enter a guilty plea as to counts 1, 4, and 5 and the government agreed to dismiss counts 2 and 3 after sentencing. (Cr-DE# 18). In connection with the plea agreement, De La Rosa executed a Factual Proffer, signed by De La Rosa, defense counsel, and the AUSA. The Factual Proffer provided:

> The United States of America and defendant Vertelio De La Rosa agree that, were this case to go to trial, the government would establish the following facts beyond a reasonable doubt:
>
> On or about June 18, 2008, the defendant, Vertelio De La Rosa, applied for a United States passport at the North Miami Post Office in Miami-Dade County, Florida, in the name of A.S.B. The defendant submitted an application for a United States passport representing that his name was A.S.B., when in truth and in fact, the defendant knew his name was not A.S.B. The defendant presented a Puerto Rico birth certificate in the name of A.S.B. as proof of citizenship and a Florida driver license in the name of A.S.B. as evidence of identification. The defendant knowingly used the Puerto Rico birth certificate in the name of A.S.B., which is the means of identification of another person, without lawful authority.
>
> On July 9, 2008, defendant was read a Miranda warning in Spanish and waived his Miranda rights in writing. Defendant admitted that he purchased the Puerto Rico birth certificate along with a social security card

3

in the name of A.S.B. for $1500 and admitted that he falsely completed an application for a United States passport in the name of A.S.B.

The defendant was found in Miami-Dade County, Florida, on July 9, 2008, after having previously been removed and deported from the United States on January 5, 1995. The defendant did not have the consent of the Attorney General of the United States or his successor to reapply for readmission. The defendant was convicted of attempted criminal sale of a controlled substance in New York Superior Court in 1994.

(Cr DE# 19).

Prior to sentencing, a PSI was prepared which revealed as follows. According to U.S.S.G. §3D1.2, counts 1 and 5 could not be grouped together as they involved separate harms, however, count 4 was excluded from the grouping rules as the court requires a term of imprisonment for aggravated identity theft to run consecutive to any other term under U.S.S.G. §3D1.1(b)(1). (PSI ¶13).

With respect to count 1, the PSI set the movant's base offense level at 8, pursuant to U.S.S.G. §2L2.2, because the offense involved providing a false statement on an application for a United States passport. (PSI ¶14). Pursuant to U.S.S.G. §2L2.2(b)(1),the offense level was increased by 2 because the movant was an unlawful alien who had been deported prior to the instant offense. (PSI ¶15). As a result, the adjusted offense level as to count 1 was 10. (PSI ¶19).

With respect to count five, the PSI set the movant's base offense level at 8, pursuant to U.S.S.G. §2L1.2, because the offense involved illegal reentry after deportation. (PSI ¶20).

Pursuant to U.S.S.G. §2L1.2(b)(1)(B),[2] the offense level was increased by 12 because the movant had been previously deported or unlawfully remained in the United States after a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less. (PSI ¶21). As a result, the adjusted offense level as to count 5 was 20. (PSI ¶25).

The combined adjusted offense level for both counts was 20. (PSI ¶31). Two levels were then deducted, pursuant to U.S.S.G. §3E1.1(a), based on the movant's timely acceptance of responsibility. (PSI ¶33). De La Rosa's total offense level was 18. (PSI ¶34).

The probation officer also determined that the movant had a total of zero criminal history points and a criminal history category of I. (PSI ¶40).

The statutory term of imprisonment as to count 1 was 0 to 10 years in prison under 18 U.S.C. §1546(a), as to count 4 was two years consecutive to any other term under 18 U.S.C. §1028A(a)(1), and as to count 5 was zero to 10 years under 8 U.S.C. §1326(b)(2). (PSI ¶69). Based on a total offense level of 18 and a criminal history category I, the movant's resulting guideline range was 27 to 33 months in prison, followed by a consecutive sentence of two years as to count four. (PSI ¶70).

On October 3, 2008, the movant appeared for sentencing. (Cr-DE# 22). The court sentenced him to a term of 24 months for count 1 and 24 months for count 5, to run concurrently, and 24 months for count 4 to run consecutive to counts 1 and 5. (Cr-DE# 23).

---

[2] The PSI mistakenly cites to U.S.S.G. §2L1.2(b)(1)(A), which provides for a 16 level increase under circumstances not present in this case.

On September 2, 2009,[3] De La Rosa filed motion to vacate his sentence pursuant to 28 U.S.C. §2255 and memorandum in support thereof.  (Cv-DE# 1).  The United States filed an answer to the complaint. (Cv-DE# 6).  De La Rosa filed a reply (Cv-DE# 7), second reply (Cv-DE# 8), and motion for summary judgment (Cv-DE# 10).  The government next filed a response in opposition to the motion for summary judgment (Cv-DE# 12) and De La Rosa filed a reply to the response (Cv DE# 13).   Lastly, De La Rosa's filed a motion requesting a declaratory judgment in his favor (Cv DE# 14).

III.   <u>Standard of Review</u>

The law is clear that section 2255 authorizes a prisoner to move a sentencing court to vacate, set aside, or correct a sentence where "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." <u>See</u> 28 U.S.C. §2255(a); <u>see</u> <u>also</u>, <u>Hill v. United States</u>, 368 U.S. 424, 426-27 (1962). "A sentence is otherwise subject to collateral attack where there is an error constituting a 'fundamental defect which inherently results in a complete miscarriage of justice.'" <u>United States v. Jones</u>, 56 F.3d 62 (4 Cir. 1995)(citations omitted).

In order for the movant to prevail on a claim of ineffective assistance of counsel, he must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have

---

[3]   <u>See</u> <u>Adams v. U.S.</u>, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing). The government does not dispute that De La Rosa's motion was timely filed.

been different.  Strickland v. Washington, 466 U.S. 668 (1984).
The standard is the same for claims of ineffective assistance on
appeal.  Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987).
A court may decline to reach the performance prong of the standard
if it is convinced that the prejudice prong cannot be satisfied.
Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995).

Review of counsel's conduct is to be highly deferential,
Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and
second-guessing an attorney's performance is not permitted.  White
v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992) ("Courts should
at the start presume effectiveness and should always avoid second-
guessing with the benefit of hindsight."); Atkins v. Singletary,
965 F.2d 952, 958 (11 Cir. 1992).  Because a "wide range" of
performance is constitutionally acceptable, "the cases in which
habeas petitioners can properly prevail on the ground of
ineffective assistance of counsel are few and far between." Rogers
v. Zant, 13 F.2d 384, 386 (11 Cir. 1994).

## IV.  Discussion

Under **grounds 1 and 2**, De La Rosa appears to argue that
defense counsel was ineffective in failing to move for a downward
departure to offset the additional time he will serve to allow the
government to process his deportation and the harsh conditions of
confinement to which he was subjected as a deportable alien.

The Eleventh Circuit had held that a court may grant a
downward departure under §5K2.0 when "there exists an aggravating
or mitigating circumstance of a kind, or to a degree, not
adequately taken into consideration by the Sentencing Commission in
formulating the guidelines." 18 U.S.C. §3553(b); United States

Sentencing Commission, Guidelines Manual, §5K2.0 (Nov. 1998); United States v. Smith, 289 F.3d 696, 710 (11th Cir. 2002). In determining whether to grant such a departure, the district court considers two questions: (1) whether any circumstance makes the case atypical, meaning that it takes the case out of the "heartland" of cases involving the conduct described in the applicable guideline; and (2) whether that circumstance should result in a different sentence. United States v. Requeiro, 240 F.3d 1321, 1324 (11th Cir. 2001).

Although the Eleventh Circuit has held that conditions of confinement may provide the basis for a downward departure pursuant to U.S.S.G. §5K2.0, it acknowledged that there is little guidance as to the type of conditions which warrant such a departure. See United States v. Pressley, 345 F.3d 1205, 1218 (11th Cir. 2003). In Pressley, the court noted that departures are generally granted only when conditions of confinement are atypical or extraordinarily extreme, and generally denied when conditions do not fall outside the norms experienced by the average prisoner. Id. at 1218-19. Where there is no evidence that the conditions of pretrial confinement are so substandard or onerous as to take the case outside the heartland of cases, a downward departure based on conditions of pretrial confinement is not warranted. See United States v. Dyck, 334 F.3d 736, 743 (8th Cir. 2003); see also, United States v. Brown, 95 F.Supp.2d 277 (E.D. Pa. 2000)(departure based on pretrial detention not warranted where defendant alleged that the jail was crowded, there was poor food, noise, and inadequate law library).

In this case, no showing has been made that had the argument been articulated at sentencing, that the court would have found that the movant's circumstances were such that it took his case

8

outside the heartland of cases. Under these circumstances, the movant has failed to establish prejudice pursuant to Strickland arising from counsel's failure to pursue this argument at sentencing, and is thus entitled to no relief on the claim.

In addition, defense counsel was not ineffective for failing to request a downward departure based on the movant's status as an alien, as it would not have succeeded. See United States v. Maung, 320 F.3d 1305, 1309 (11th Cir. 2003)(Downward departure not proper if based on a desire to shield a defendant from immigration consequences of conviction); United States v. Lopez-Salas, 266 F.3d 842, 846-847, 849-51 (8th Cir. 2001)(although the increased severity in the conditions of confinement resulting from alien status is a possible basis for departure, such a departure would be "only appropriate in exceptional circumstances, such as where there is a substantial, undeserved increase in the severity of conditions of confinement, which would affect a substantial portion of a defendant's sentence").

Finally, the Eleventh Circuit has held that a defendant is required to proffer a nonfrivolous defense to deportation before his consent to deportation could constitute mitigating circumstance warranting a downward departure under §5K2.0, resulting in the imposition outside the range established by the applicable Sentencing Guidelines. United States v. Mignott, 184 F.3d 1288, 1291 (11 Cir. 1999)(requiring defendants to proffer a nonfrivolous defense to deportation before recognizing consent to deportation as a ground for departure); see also: United States v. Marin-Castaneda, 134 F.3d 551, 555 (3 Cir. 1998); United States v. Gonzalez-Portillo, 121 F.3d 1122 (7 Cir. 1997). In this case, the movant has failed to proffer a non-frivolous defense to deportation, and any request for a downward departure on that

ground would have failed. Under these circumstances, the movant has failed to establish deficient performance or prejudice pursuant to Strickland v. Washington, 466 U.S. 668 (1984) arising from counsel's failure to pursue this claim. Thus, he is not entitled to relief on this claim.

Under **ground 3**, De La Rosa argues that his counsel was ineffective in failing to argue that De La Rosa did not commit aggravated identity theft under 18 U.S.C. §1028(a)(1) and the Supreme Court's interpretation of this statute in Flores-Figueroa v. U.S., 129 S.Ct. 1886 (2009), because De La Rosa lacked the requisite knowledge. In addition, De La Rosa appears to argue that he is actually innocent of the crime because he did not know that the identification actually belonged to another person.

With respect to the ineffective assistance of counsel argument, De La Rosa mistakenly asserts that the Supreme Court issued Flores-Figueroa on October 20, 2008, two months before De La Rosa's sentencing hearing. The Supreme Court did not issue Flores-Figueroa until May 4, 2009.

The law in the Eleventh Circuit is well established that it is not ineffective assistance for an attorney to fail to foresee a change in the law. See, United States v. Ardley, 273 F.3d 991 (11 Cir. 2001)(denial of suggestion for rehearing en banc)(our circuit law completely forecloses the contention that an attorney's failure to anticipate the Apprendi decision is ineffective assistance); Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir.1994) ("We have held many times that '[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.'"). Counsel is not ineffective for failing to foresee the development in the law, which was contrary to then established Eleventh Circuit precedent.

When the court sentenced De La Rosa, the Eleventh Circuit's opinion in U.S. v. Hurtado, 508 F.3d 603 (11 Cir. 2007) was controlling.  In that case, the court held "that § 1028A(a)(1) did not require the government to prove that [the defendant] knew that the means of identification that he possessed and used belonged to another actual person." Id. at 610.  In Flores-Figueroa v. U.S., 129 S.Ct. 1886, 1894 (2009), the Supreme Court expressly rejected the Hurtado court's interpretation of the statute and held "that §1028A(a)(1) requires the Government to show that the defendant knew that the means of identification at issue belonged to another person."  De La Rosa's counsel is not ineffective for failing to anticipate that, several months after sentencing, the Supreme Court would issue an opinion abrogating Hurtado.

De La Rosa also appears to assert under ground 3 that in light of Flores-Figueroa, his conviction and sentence for aggravated identity theft can no longer stand because the government failed to present evidence that he knew that the identification at issue belonged to another person.  The government expressly addresses, and rejects, De La Rosa's actual innocence argument.

While the Supreme Court is the only authority capable of creating a new right, for a first §2255 motion, even a district court may determine retroactive applicability. See Dodd v. United States,[4] 365 F.3d 1273, 1280-81 (11th Cir. 2004), citing, Garcia v. United States, 278 F.3d 1210, 1213 n. 4 (11th Cir.). cert. den'd, 537 U.S. 895 (2002); see also United States v. Swinton, 333 F.3d 481, 487 (3d Cir.)("We conclude-and the parties agree-that the statute of limitations provision of § 2255 allows district courts

---

[4]In addition to holding that district courts may determine retroactivity, the Eleventh Circuit in Dodd also set forth its reasoning in detail regarding when the statute of limitations begins to run under 28 U.S.C. § 2255(f)(3).

and courts of appeals to make retroactivity decisions."), <u>cert. den'd</u>, 540 U.S. 977 (2003).

As explained below, the Undersigned finds that the new rule asserted in <u>Flores-Figueroa</u> is retroactively applicable to cases on collateral review. Under <u>Teague v. Lane</u>, 489 U.S. 288, 311 (1989) (plurality opinion), "[a] new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a 'watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'" <u>Whorton v. Bockting</u>, 549 U.S. 406, 416 (2007). The Supreme Court has identified two categories of "substantive" rules: "decisions that narrow the scope of a criminal statute by interpreting its terms," and "constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." <u>Schriro v. Summerlin</u>, 542 U.S. 348, 351-52 & n.4 (2004). An example of the first type of substantive rule is the holding of <u>Bailey v. United States</u>, 516 U.S. 137 (1995), that a conviction for "use" of a firearm under 18 U.S.C. § 924(c) requires proof of the defendant's "active employment of the firearm." <u>See Bousley v. United States</u>, 523 U.S. 614, 620-21 (1998). An example of the second type of substantive rule is the rule adopted in <u>Atkins v. Virginia</u>, 536 U.S. 304, 321 (2002), that "the Constitution 'places a substantive restriction on the State's power to take the life' of a mentally retarded offender."

In <u>Flores-Figueroa</u>, the Supreme Court construed the knowledge element of the aggravated identity theft statute, 18 U.S.C. §1028A.[5] The Court held that in order to establish a violation of

_____

[5] Section 1028A provides a mandatory term of two years in prison for a defendant who "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C. §1028A.

§1028A, the government must show that the defendant knew that the means of identification which was used by the defendant belonged to another person. Flores-Figueroa, 129 S.Ct. at 1888, 1894. In other words, mere proof that the means of identification used by a defendant, such as a social security number or resident alien card, was assigned to an actual person is in itself insufficient to establish a violation of §1028A. Moreover, the Supreme Court further found that the term "knowingly" in §1028A(a)(1) applies to each of the subsequent elements of the statute as a matter of ordinary English usage. Id. at 1890-94.

It is evident that the Supreme Court's ruling thus constitutes a narrowing of the statute as previously construed by the Eleventh Circuit's decision in United States v. Hurtado, 508 F.3d 603 (11th Cir. 2007). Thus, Flores-Figueroa applies retroactively to cases on collateral review. See Bousley, 523 U.S. at 620-21. Although the Figueroa claim could have been, but was not raised on appeal, the movant can have the claim considered on collateral review if he can demonstrate cause for the failure to raise the claim earlier, as well as actual prejudice resulting from the alleged error. See United States v. Frady, 456 U.S. 152 (1982). The cause and prejudice standard requires the movant to show not only that "some objective factor external to the defense" impeded his efforts to raise the issue earlier, Coleman v. Thompson, 501 U.S. 722, 753 (1992), but also that the error he alleged "worked to his actual and substantial disadvantage." Frady, 456 U.S. at 170.

Here, the movant meets Bousley's actual innocence exception to the Frady procedural bar rule. In Bousley, the Supreme Court extended the actual exception to the procedural bar rule to cases where the defendant had pled guilty but a post-conviction change in the law potentially shows the conviction and punishment are for an

act that the law does not make criminal.[6] The movant in <u>Bousley</u> had pled guilty to an offense under the "use" prong of 18 U.S.C. §924(c) prior to the Supreme Court's decision in <u>Bailey v. United States</u>, 516 U.S. 137 (1995), which significantly narrowed the meaning of "use" under § 924(c). Bousley did not challenge his §924(c) conviction on appeal and instead filed a §2255 motion, relying on <u>Bailey</u>, arguing that his guilty plea was not knowing and voluntary because neither he, his attorney, nor the court correctly understood the essential elements of the crime with which he was charged and pled guilty to. The Supreme Court held that Bousley's <u>Bailey</u> challenge was procedurally barred under <u>Frady</u> because he had not raised this argument on direct appeal. <u>Bousley</u>, 523 U.S. at 621-23. The Court further held, however, that Bousley's claim could still be reviewed if he could establish that constitutional error in his plea colloquy had probably resulted in the conviction of one who is actually innocent.

"To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" <u>Bousley</u>, 523 U.S. at 623 (<u>quoting</u> <u>Schlup v Delo</u>, 513 U.S. 298, 327-28 (1995)). The Court clarified that "'actual innocence' means factual

---

[6]"Actual innocence is not itself a substantive claim, but rather serves only to lift the procedural bar caused by [movant's] failure timely to file his §2255 motion." <u>See</u> <u>United States v. Montano</u>, 398 F.3d 1276, 1284 (11th Cir. 2005) (attacking conviction based on guilty plea). <u>But see</u> <u>House v. Bell</u>, 547 U.S. 518, 555 (2006) (declining to reach issue of whether free-standing actual innocence claim is possible where post-trial new DNA evidence in capital case met stringent showing required by actual innocence exception to procedural default rule); <u>Herrera v. Collins</u>, 506 U.S. 390, 417 (1993) (assuming for sake of argument that in a capital case a showing of actual innocence after trial would render the execution of a defendant unconstitutional, and warrant federal habeas review if no state avenue of relief was open to him); <u>Mize v. Hall</u>, 532 F.3d 1184, 1196, 1198 (11th Cir. 2008)(petitioner sentenced to death failed post-trial to establish actual innocence exception to procedural default doctrine and a fortiori could not establish "a freestanding actual innocence claim (if such a claim in fact exists).").

innocence, not mere legal insufficience." Bousley, 523 U.S. at 623. The Court concluded, "[I]f, on remand, petitioner can make that showing, he will then be entitled to have his defaulted claim of an unintelligent plea considered on its merits." Id. at 624.

In this case, the government refutes De La Rosa's claim that he was innocent by arguing, "though the Movant now claims he did not know that the identification he used actually belonged to another individual, he admitted, as evidenced by his signature on the factual proffer, that he knowingly used the birth certificate belonging to another individual. As such, he cannot now claim that he lacked knowledge that A.B.S. was an actual individual." (Cv DE# 6, p. 10). The government correctly states that the evidence supporting count 4 is found in the Factual Proffer signed by De La Rosa. However, contrary to the government's position, a review of this document reveals that the government did not establish that the movant knew the identity used belonged to an actual person. The Factual Proffer provides in pertinent part:

> On or about June 18, 2008, the defendant, Vertelio De La Rosa, applied for a United States passport at the North Miami Post Office in Miami-Dade County, Florida, in the name of A.S.B. The defendant submitted an application for a United States passport representing that his name was A.S.B., when in truth and in fact, the defendant knew his name was not A.S.B. The defendant presented a Puerto Rico birth certificate in the name of A.S.B. as proof of citizenship and a Florida driver license in the name of A.S.B. as evidence of identification. **The defendant knowingly used the Puerto Rico birth certificate in the name of A.S.B., which is the means of identification of another person, without lawful authority.**
>
> On July 9, 2008, defendant was read a Miranda warning in Spanish and waived his Miranda rights in writing. Defendant admitted that he purchased the Puerto Rico birth certificate along with a social security card in the name of A.S.B. for $1500 and admitted that he falsely completed an application for a United States passport in

the name of A.S.B.

(Cr DE# 19).  Nothing in the above factual proffer establishes that De La Rosa knew that A.S.B. was a real individual.  In his post-Miranda statement, he admitted that he purchased a birth certificate and social security card, but did not admit that he knew the individual named on these documents was an actual person.

Thus, as correctly determined by the Supreme Court in <u>Figueroa</u> the conviction for aggravated identity theft pursuant to §1028A can no longer stand. The movant is entitled to vacatur of his conviction and sentence as to count 4.

The movant has clearly established that he is entitled to relief under §2255, and therefore vacatur of his judgment is warranted and a new sentencing hearing recommended. First, <u>Flores-Figueroa</u> applies retroactively to this case on collateral review such that the movant's prior conviction for aggravated identity theft must be vacated. Second, the movant's motion has establish cause and prejudice, as well as actual innocence to excuse the bar to his <u>Flores-Figueroa</u> claim.

Under **ground 4**, De La Rosa asserts ineffective assistance of counsel for failing to object to the 12-level increase in his offense level under U.S.S.G. §2L1.2(b)(1)(B) as, contrary to the PSI's assertion, De La Rosa had not been previously convicted of a drug trafficking offense.

U.S.S.G. §2L1.2(b)(1)(B) provides in pertinent part that "[I]f the defendant previously was deported, or unlawfully remained in the United States after--(B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or

less, increase by 12 levels." Pursuant to this provision, the PSI provided: "Specific Offense Characteristics. Because the defendant was previously deported or unlawfully remained in the United States after a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, the offense level is increased by 12 levels." (PSI ¶21).

De La Rosa claims that the PSI "stated that Petitioner had been convicted of . . . a 'drug trafficking offense,' namely the offense of 'possession of a marked bill (U.S. currency)." De La Rosa states that the court should not have relied on the PSI because the probation officer included this prior conviction without first obtaining a copy of the indictment.

The PSI provides the following information regarding this prior conviction:

| Date of Arrest | Charge/Agency | Date Sentence Imposed/ Disposition |
|---|---|---|
| 10/11/93 (age 25) | Criminal Sale of Controlled Substances/Narcotic Drug, New York City Police Dept., New York, NY | Dkt#: 93-10332 5/23/94: 6 months imprisonment followed by probation. |
| The circumstances for this case are not available. However, the defendant claimed he was sentenced to six months imprisonment followed by four years probation. After his release from jail, he was deported (Jan. 5, 1995). Requests for arrest affidavits (police complaint) and probation records were submitted to the Supreme Court of the State of New York, and are pending receipt. | | |

(PSI ¶36).

The foregoing refutes De La Rosa's claim that the PSI relied on a prior conviction for possession of a marked bill when recommending a 12 level enhancement under §2L1.2(b)(1)(B). The PSI

clearly states that the prior conviction was a drug related offense, namely, criminal sale of controlled substances/narcotic drug.  In addition, elsewhere in his §2255 motion, De La Rosa expressly concedes, "On or about October 11, 1993, Petitioner was indicted by a Grand Jury of the County of New York, accused of the crime of Criminal Sale of a Controlled Substance in the third degree, in violation of the Penal Law §220.39(1).  Petitioner pled guilty to the above indictment.  he was subsequently sentenced on May 23, 1994 to six (6) months imprisonment," in case number 93-10332. (Cv DE# 1, p. 38).  The factual proffer signed by De La Rosa stated, "The defendant was convicted of attempted criminal sale of a controlled substance in New York Superior Court in 1994." (Cr DE# 19).

The information on which the probation officer relied and the information De La Rosa himself provided in his §2255 motion regarding the 1993 conviction establishes that he had a prior felony drug trafficking offense for which the sentence imposed was 13 months or less. See U.S.S.G. §2L1.2(b)(1)(B). De La Rosa's 1993 conviction was properly considered and supported the 12 level enhancement. Under these circumstances, no deficient performance or prejudice has been established arising from counsel's failure to pursue this nonmeritorious claim.

Under **ground 5**, De La Rosa asserts ineffective assistance of counsel for failing to negotiate an additional one level decrease in the total offense level under U.S.S.G. §3E1.1(b) and for failing to argue that the government breached the plea agreement by failing to file a motion for this one level decrease, pursuant to §5K1.1 or Fed. R. Crim. Pro. 35, based on the movant's substantial assistance.

The plea agreement included the following language:

This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make the defendant's cooperation, or lack thereof, known to the court at the time of sentencing.  If in the sole and unreviewable judgment of this Office the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the court's downward departure from the advisory sentence calculated under the Sentencing Guidelines, this Office may at or before sentencing make a motion consistent with the intent of Section 5K1.1 of the Sentencing Guidelines prior to sentencing, or Rule 35 of the Federal Rules of Criminal Procedure subsequent to sentencing, reflecting that the defendant has provided substantial assistance and recommending that the defendant's sentence be reduced from the advisory sentence suggested by the Sentencing Guidelines.  The defendant acknowledges and agrees, however, that nothing in this Agreement may be construed to require this Office to file any such motion(s) and that this Office's assessment of the nature, value, truthfulness, completeness, and accuracy of the defendant's cooperation shall be binding insofar as the appropriateness of this Office's filing of any such motion is concerned.

(Cr DE# 18, ¶8).

Rule 35 of the Federal Rules of Criminal Procedure provides that a motion to reduce based on substantial assistance to the government may only be made by motion of the government. The government has a considerable amount of discretion regarding this decision, and the Eleventh Circuit has held that the government's determination of "substantial assistance" is encompassed within the zone of prosecutorial discretion and subject to review only upon a showing of a constitutionally impermissible motive or the breach of an express agreement to file a motion. <u>United States v. Gonslaves</u>, 121 F .3d 1416, 1419 (11 Cir.1997); <u>United States v. Forney</u>, 9 F.3d 1492, 1502 (11 Cir.1993)(<u>citing</u> <u>Wade v. United States</u>, 504 U.S. 181 (1992)).

In <u>Wade</u>, <u>supra</u>, the Supreme Court held that "federal district

courts have authority to review a prosecutor's refusal to file a substantial assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive."[7] <u>Wade</u>, 504 U.S. at 185-86. The Court emphasized that "a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or to an evidentiary hearing. Nor would additional but generalized allegations of improper motive." <u>Id</u>.

In this case, De La Rosa entered an agreement under which he expressly acknowledged that the government was not obligated to move for a downward departure. Furthermore, the movant has neither alleged nor shown that the government's failure to file the substantial assistance motion is based on a constitutionally impermissible motive, or that any alleged refusal by the prosecutor to move for a downward departure was not rationally related to any legitimate Government end. Moreover, the movant cannot establish deficient performance or prejudice arising from counsel's failure to assist him in obtaining a Rule 35 motion. Thus, the movant is entitled to no relief on this claim.

Under **ground 6**, the movant claims that counsel should have moved to dismiss the indictment on the grounds that the deportation order which formed the basis for his violation of 8 U.S.C. §1326 was invalid. As will be recalled, the movant was charged with and pleaded guilty to illegal re-entry following deportation, in violation of 8 U.S.C. §1326(a) and (b)(2). De La Rosa goes on to explain at length why his deportation proceedings were unconstitutional.

---

[7]A prosecutor's refusal to file a substantial-assistance motion would be unconstitutional if, for example, the refusal was based upon the defendant's race or religion. <u>Id</u>.

On May 11, 2005, Congress enacted PL 109-13, Sec. 106 entitled "Judicial Review of Orders of Removal," which provides that the Court of Appeals shall be the exclusive means of review for final orders of removal, exclusion or deportation. The movant here challenges the propriety of the order of removal and his ensuing deportation by the Department of Homeland Security. Such review must be taken in the Court of Appeals. Under these circumstances, the movant is advised that these claims should be raised directly with the Eleventh Circuit Court of Appeals as they are not cognizable in this collateral proceeding.

To the extent the movant means to argue in claim 6 that counsel in the underlying conviction under attack here was ineffective for failing to investigate and present a defense that his due process rights were violated during his 1995 removal proceedings, he is entitled to no relief on the claim.

The movant waived his right to contest all nonjurisdictional defects and defenses, when he entered a knowing and voluntary guilty plea. Where a criminal defendant enters a knowing, voluntary, and intelligent plea of guilty to an offense or offenses, which by definition admits all elements of a formal criminal charge, he waives, or more accurately, forfeits all non-jurisdictional defects and defenses. See Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995); Smith v. United States, 447 F.2d 487, 488 (5th Cir. 1971), citing, Hayes v. Smith, 447 F.2d 488 (5th Cir. 1971); see also, Wilson v. United States, 962 F.2d 966 (11th Cir. 1992); United States v. Broce, 488 U.S. 563 (1989); United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000), citing, United States v. Smallwood, 920 f.2d 1231, 1240 (5th Cir. 1991). "This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the

guilty plea involuntary." <u>United States v. Broce</u>, <u>supra</u>; <u>Wilson</u>, <u>supra</u>. To enter into a voluntary plea, the defendant must understand the law in relation to the facts. <u>McCarthy v. United States</u>, 394 U.S. 459 (1969). In this case, the movant understood the facts and the elements of the offense upon which the charges rested. Moreover, by way of entering into the negotiated plea agreement, the movant was telling his lawyer not to conduct any further investigation and not present at a trial proceeding any legal defenses that he may be entitled to as it relates to his case. Under these circumstances, no deficient performance or prejudice has been established and the movant is therefore entitled to no relief on the claim. Notwithstanding, the movant cannot prevail on this claim on the merits.

Under **ground 7**, De La Rosa asserts ineffective assistance of counsel for failing to argue at the sentencing hearing for a two-level decrease as he was entitled to a "safety valve" adjustment under 18 U.S.C. §3553(f).

Title 18 U.S.C. §3553(f) provides:

Limitation on applicability of statutory minimums in certain cases.--Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963), the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28  without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that--

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. §3553(f).

In this case, De La Rosa was convicted for making a false statement on an application for a United States Passport in violation of 18 U.S.C. §1542 (count 1); aggravated identity theft in violation of 18 U.S.C. §1028A(a)(1)(count 4); and illegal re-entry in violation of 8 U.S.C. §1326(a) (count 5). (Cr-DE# 8). His offenses are not listed "under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963)." 18 U.S.C. §3553(f). Accordingly, 18 U.S.C. §3553(f) was not applicable in his case. The movant cannot establish deficient performance or prejudice arising from counsel's failure to raise a meritless claim.

23

## V.   Waiver Due to Voluntary Guilty Plea

In addition, De La Rosa's arguments under all claims, with the exception of claim 3 regarding his conviction for aggravated identity theft, were waived due to the entry of a knowing and voluntary guilty plea. The law is clear that a movant waives his right to contest all nonjurisdictional defects and defenses, when he enters a knowing and voluntary guilty plea to the violation. Where a criminal defendant enters a knowing, voluntary, and intelligent plea of guilty to an offense or offenses, he waives, or more accurately, forfeits all non-jurisdictional defects and defenses. See United States v. Broce, 488 U.S. 563 (1989); McMann v. Richardson, 397 U.S. 759 (1970) (voluntary guilty plea waives all non-jurisdictional defects); United States v. De La Garza, 516 F.3d 1266, 1271 (11 Cir. 2008), quoting, Wilson v. United States, 962 F.2d 996 (11 Cir. 1992)(claim of ineffective assistance of counsel relating to pre-plea issues waived by voluntary guilty plea); McCoy v. Wainwright, 804 F.2d 1196, 1198 (11 Cir. 1986)(voluntary guilty plea waives all non-jurisdictional defects); see also, United States v. Glinsey, 209 F.3d 386, 392 (5 Cir. 2000), citing, United States v. Smallwood, 920 f.2d 1231, 1240 (5 Cir. 1991); Smith v. United States, 447 F.2d 487, 488 (5 Cir. 1971), citing, Hayes v. Smith, 447 F.2d 488 (5 Cir. 1971). "This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." United States v. Glinsey, 209 F.3d at 392.

In this case, review of the record confirms that the movant's plea was knowing and voluntary.  To ensure that a plea is voluntary and knowing, Fed.R.Cr.P. 11(b)(1) states that "the court must address the defendant personally in open court before accepting the plea and inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant

24

is pleading." <u>Gordon v. United States</u>, 496 F.3d 1270, 1277 (11 Cir. 2007). The rule imposes upon a district court the obligation and responsibility to conduct a searching inquiry into the voluntariness of a defendant's guilty plea. <u>Id</u>. (citations omitted).

Thus, "[a] court accepting a guilty plea must comply with Rule 11 and specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." <u>United States v. Moriarty</u>, 429 F.3d 1012, 1019 (2005). In <u>Moriarty</u>, the Eleventh Circuit specifically held as follows:

> [t]o ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea, including: the right to plead not guilty (or persist in such a plea) and to be represented by counsel; the possibility of forfeiture; the court's authority to order restitution and its obligation to apply the Guidelines; and the Government's right, in a prosecution for perjury, to use against the defendant any statement that he gives under oath.

<u>Id.</u>

Review of the change of plea proceedings reveals that the court conducted a thorough Rule 11 proceeding. (Cv-DE# 18-1, Transcript 10/3/08 Change of Plea Hearing).   At that time, the movant acknowledged under oath[8] that he was satisfied with

---

[8]   The law is clear that "solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977); <u>United States v. Rogers</u>, 848 F.2d 166, 168 (11 Cir. 1988). The subsequent presentation of conclusory allegations, unsupported by specifics, is subject to summary

counsel's representation. (<u>Id</u>. at 3-4).  The court advised and the movant also acknowledged his understanding that he could be sentenced to ten years under count 1 and ten years under count 5. (<u>Id</u>. at 4-5).  The movant denied being forced, threatened, or coerced into changing his plea. (<u>Id</u>. at 9-10).  Finally, the movant confirmed knowing that by entering into the plea he was waiving his constitutional rights to a jury trial and to confront and present witnesses. (<u>Id</u>. at 10-12).

On the record before this court, it is evident that the movant understood the facts and the elements of the offenses upon which the charges rested. Moreover, by way of entering into the negotiated plea agreement, the movant was telling his lawyer not to conduct any further investigation and not present at a pre-trial or trial proceeding any legal defenses that he may be entitled to as it relates to his case. Under these circumstances, no showing has been made that the plea was anything but knowing and voluntary.

Thus, by entering in to a knowing and voluntary plea, the movant waived all nonjurisdictional defects and defenses. He is therefore barred from pursing his claims. Thus, no showing has been made that counsel was deficient or that the movant suffered prejudice therefrom. <u>See</u> <u>Strickland</u>, <u>supra</u>.

### VI.   <u>Conclusion</u>

It is therefore recommended that: (1) this motion to vacate be granted as to claim three, and (2) his conviction as to Count 4 for aggravated identity theft be vacated in conformity with the holding in <u>Flores-Figueroa</u> and an amended judgment entered.

---

dismissal, as are contentions which in the face of the record are wholly incredible.  <u>Machibroda v. United States</u>, 368 U.S. 487 (1962).

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 7th day of September, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Vertilio De La Rosa
     06499-265 / ME-403-L
     McRae Correction Facility
     P.O. Drawer #30
     Mcrae City, GA 31055

     Kelly S. Karase
     United States Attorney's Office
     99 NE 4 Street
     Miami, FL 33132