```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA
                              CASE NO. 09-Cv-22646-COHN
                                    (08-Cr-20685-COHN)
                              MAGISTRATE JUDGE P. A. WHITE

VERTELIO DE LA ROSA,        :

      Movant,               :

v.                          :        REPORT OF
                                     MAGISTRATE JUDGE
UNITED STATES OF AMERICA,   :        FOLLOWING REMAND

      Respondent.           :
_____
```

## I. Introduction

This matter came to this Court on Vertilio De La Rosa's motion to vacate pursuant to 28 U.S.C. §2255, attacking his conviction and sentence for making a false statement on an application for a United States Passport in violation of 18 U.S.C. §1542, aggravated identity theft in violation of 18 U.S.C. §1028A(a)(1), and illegal re-entry in violation of 8 U.S.C. §1326(a), entered following a guilty plea in case no. 08-Cr-20685-Cohn.

This matter is currently before this Court on remand from the Eleventh Circuit Court of Appeals, which specifically directed that the Court address the following claims:

> [C]counsel was ineffective for (a) failing to recognize and to advise De La Rosa that he would be subject to additional imprisonment while awaiting deportation; (b) failing to recognize and to advise De La Rosa that he would be subject to automatic deportation if convicted of a crime for which the possible sentence exceeded one year; and (c) failing to negotiate a more favorable plea agreement.

De La Rosa v. United States, 2012 WL 974981 (11th Cir. 2012).

This Cause has been re-referred to the to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Cases in the United States District Courts. (Cv DE# 41).

## II.   Facts and Procedural History

De La Rosa was charged by indictment with making a false statement on an application for a United States Passport in violation of 18 U.S.C. §1542 (count 1), falsely representing himself to be a United States citizen in violation of 18 U.S.C. §911 (count 2); making a false statement in writing to a government agency in violation of 18 U.S.C. §1001(a)(2) (count 3); aggravated identity theft in violation of 18 U.S.C. §1028A(a)(1)(count 4); and illegal re-entry in violation of 8 U.S.C. §1326(a) (count 5). (Cr-DE# 8).

De La Rosa entered a written plea agreement under which he agreed to enter a guilty plea as to counts 1, 4, and 5 and the government agreed to dismiss counts 2 and 3 after sentencing. (Cr-DE# 18).  In connection with the plea agreement, De La Rosa executed a Factual Proffer, signed by De La Rosa, defense counsel, and the AUSA.  The Factual Proffer provided:

> The United States of America and defendant Vertelio De La Rosa agree that, were this case to go to trial, the government would establish the following facts beyond a reasonable doubt:
>
> On or about June 18, 2008, the defendant, Vertelio De La Rosa, applied for a United States passport at the North Miami Post Office in Miami-Dade County, Florida, in the name of A.S.B.  The defendant submitted an application for a United States passport representing that his name was A.S.B., when in truth and in fact, the defendant knew his name was not A.S.B. The defendant presented a Puerto Rico birth certificate in the name of

>   A.S.B. as proof of citizenship and a Florida driver license in the name of A.S.B. as evidence of identification. The defendant knowingly used the Puerto Rico birth certificate in the name of A.S.B., which is the means of identification of another person, without lawful authority.
>
>   On July 9, 2008, defendant was read a <u>Miranda</u> warning in Spanish and waived his <u>Miranda</u> rights in writing. Defendant admitted that he purchased the Puerto Rico birth certificate along with a social security card in the name of A.S.B. for $1500 and admitted that he falsely completed an application for a United States passport in the name of A.S.B.
>
>   The defendant was found in Miami-Dade County, Florida, on July 9, 2008, after having previously been removed and deported from the United States on January 5, 1995. The defendant did not have the consent of the Attorney General of the United States or his successor to reapply for readmission. The defendant was convicted of attempted criminal sale of a controlled substance in New York Superior Court in 1994.

(Cr DE# 19).

The court conducted an October 3, 2008 change of plea hearing. (DE# 18, Ex. 1; Change of Plea Hearing Transcript). The court conducted a colloquy with De la Rosa during which he answered questions regarding his decision to plead guilty under oath, with the assistance of a translator. (<u>Id.</u>).

Prior to sentencing, a PSI was prepared which revealed as follows. According to U.S.S.G. §3D1.2, counts 1 and 5 could not be grouped together as they involved separate harms, however, count 4 was excluded from the grouping rules as the court requires a term of imprisonment for aggravated identity theft to run consecutive to any other term under U.S.S.G. §3D1.1(b)(1). (PSI ¶13).

With respect to count 1, the PSI set the movant's base offense

level at 8, pursuant to U.S.S.G. §2L2.2, because the offense involved providing a false statement on an application for a United States passport. (PSI ¶14). Pursuant to U.S.S.G. §2L2.2(b)(1), the offense level was increased by 2 because the movant was an unlawful alien who had been deported prior to the instant offense. (PSI ¶15). As a result, the adjusted offense level as to count 1 was 10. (PSI ¶19).

With respect to count five, the PSI set the movant's base offense level at 8, pursuant to U.S.S.G. §2L1.2, because the offense involved illegal reentry after deportation. (PSI ¶20). Pursuant to U.S.S.G. §2L1.2(b)(1)(B),[1] the offense level was increased by 12 because the movant had been previously deported or unlawfully remained in the United States after a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less. (PSI ¶21). As a result, the adjusted offense level as to count 5 was 20. (PSI ¶25).

The combined adjusted offense level for both counts was 20. (PSI ¶31). Two levels were then deducted, pursuant to U.S.S.G. §3E1.1(a), based on the movant's timely acceptance of responsibility. (PSI ¶33). De La Rosa's total offense level was 18. (PSI ¶34).

The probation officer also determined that the movant had a total of zero criminal history points and a criminal history category of I. (PSI ¶40).

The statutory term of imprisonment as to count 1 was 0 to 10 years in prison under 18 U.S.C. §1546(a), as to count 4 was two

---

[1] The PSI mistakenly cites to U.S.S.G. §2L1.2(b)(1)(A), which provides for a 16 level increase under circumstances not present in this case.

years consecutive to any other term under 18 U.S.C. §1028A(a)(1), and as to count 5 was zero to 10 years under 8 U.S.C. §1326(b)(2). (PSI ¶69). Based on a total offense level of 18 and a criminal history category I, the movant's resulting guideline range was 27 to 33 months in prison, followed by a consecutive sentence of two years as to count four. (PSI ¶70).

On December 19, 2008, the movant appeared for sentencing. (DE# 18, Ex. 2; Sentencing Hearing Transcript). The court sentenced him to a term of 24 months for count 1 and 24 months for count 5, to run concurrently, and 24 months for count 4 to run consecutive to counts 1 and 5. (Cr-DE# 23).

On September 2, 2009,[2] De La Rosa filed motion to vacate his sentence pursuant to 28 U.S.C. §2255 and memorandum in support thereof. (Cv-DE# 1). The United States filed an answer to the complaint. (Cv-DE# 6). De La Rosa filed a reply (Cv-DE# 7), second reply (Cv-DE# 8), and motion for summary judgment (Cv-DE# 10). The government next filed a response in opposition to the motion for summary judgment (Cv-DE# 12) and De La Rosa filed a reply to the response (Cv DE# 13).

In a September 7, 2010 Report (Cv DE# 21), the Undersigned construed Claims 1 and 2 as a single claim—that De La Rosa's counsel was ineffective for failing to move for a downward departure to offset the additional time he would serve while the government processed his deportation order—and recommended denying it. See De La Rosa, 2012 WL 974981 at *1. Next, the Report construed Claim 3 as asserting both an ineffective assistance of

---

[2]   See Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing). The government does not dispute that De La Rosa's motion was timely filed.

counsel claim and an underlying claim that De La Rosa's conviction was invalid because the government failed to prove each element of the offense.  Id.  The Undersigned recommended denying the ineffective assistance of counsel claim raised in Claim 3 but recommended granting De La Rosa's motion based on his underlying challenge to his aggravated identity theft conviction.  Id.

The District Court adopted the report and recommendation in part, it reversed the recommendation on Claim 3. (Cv DE# 24). In doing so, the district court concluded that De La Rosa failed to overcome his procedural default because sufficient evidence existed for a reasonable juror to conclude that De La Rosa knew that the means of identification belonged to another person.  See De La Rosa, 2012 WL 974981 at *1.

On appeal, the Eleventh Circuit affirmed the District Court's decision with respect to claim 3.  However, the Eleventh Circuit remanded based on the following:

> The district court failed to consider the arguments raised in Claim 1 of De La Rosa's section 2255 motion. Construed liberally, De La Rosa asserted in Claim 1 that his counsel was ineffective for (a) failing to recognize and to advise De La Rosa that he would be subject to additional imprisonment while awaiting deportation; (b) failing to recognize and to advise De La Rosa that he would be subject to automatic deportation if convicted of a crime for which the possible sentence exceeded one year; and (c) failing to negotiate a more favorable plea agreement. Because each of these arguments constitutes a separate constitutional claim under Clisby [v. Jones, 960 F.2d 925, 936 (11th Cir.1992)] but was not addressed by the district court, we vacate the denial of the motion and remand the case with instructions for the district court to consider each distinct claim raised in Claim 1.

De La Rosa, 2012 WL 974981 at *2.  The District Court re-referred the matter to the Undersigned in light of the Eleventh Circuit's

6

opinion. (Cv DE# 41).

### III. Standard of Review

Pursuant to 28 U.S.C. §2255, a prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. §2255. If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. To obtain this relief on collateral review, however, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)(rejecting the plain error standard as not sufficiently deferential to a final judgment).

Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). See also Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)(explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous").

It should further be noted that the party challenging the sentence has the burden of showing that it is unreasonable in light

of the record and the §3553(a) factors. <u>United States v. Talley</u>, 431 F.3d 784, 788 (11th Cir. 2005). The Eleventh Circuit recognizes "that there is a range of reasonable sentences from which the district court may choose," and ordinarily expect a sentence within the defendant's advisory guideline range to be reasonable. <u>Id</u>.

### A. <u>Guilty Plea Principles</u>

It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. <u>Boykin v. Alabama</u>, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970). <u>See also</u> <u>United States v. Ruiz</u>, 536 U.S. 622, 629 (2002); <u>Hill v. Lockhart</u>, 474 U.S. 52, 56 (1985); <u>Henderson v. Morgan</u>, 426 U.S. 637, 645 n. 13 (1976). To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. <u>United States v. Moriarty</u>, 429 F.3d 1012, 1019 (11th Cir. 2005); <u>United States v. Mosley</u>, 173 F.3d 1318, 1322 (11th Cir. 1999).

After a criminal defendant has pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise jurisdictional issues, <u>United States v. Patti</u>, 337 F.3d 1317, 1320 (11th Cir. 2003), <u>cert. den'd</u>, 540 U.S. 1149 (2004), attack the voluntary and knowing character of the guilty plea, <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973); <u>Wilson v. United States</u>, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, <u>United States v. Fairchild</u>,

8

803 F.2d 1121, 1123 (11th Cir. 1986). To determine that a guilty plea is knowing and voluntary, a district court must comply with Rule 11 and address its three core concerns: "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." Id. See United States v. Frye, 402 F.3d 1123, 1127 (11th Cir. 2005)(per curiam); United States v. Moriarty, 429 F.3d 1012 (11th Cir. 2005).³

In other words, a voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. Mabry v. Johnson, 467 U.S. 504, 508 (1984). A guilty plea must therefore stand unless induced by misrepresentation made to the accused person by the court, prosecutor, or his own counsel. Mabry, 467 U.S. at 509, quoting, Brady v. United States, 397 U.S. at 748. If a guilty plea is induced through threats, misrepresentations, or improper promises, the defendant cannot be said to have been fully apprised of the consequences of the guilty plea and may then challenge the guilty plea under the Due Process Clause. Mabry, 467 U.S. at 509. See also Santobello v. New York, 404 U.S. 257 (1971).

B. Ineffective Assistance of Counsel Principles

---

³In Moriarty, the Eleventh Circuit specifically held as follows:

> [t]o ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea, including: the right to plead not guilty (or persist in such a plea) and to be represented by counsel; the possibility of forfeiture; the court's authority to order restitution and its obligation to apply the Guidelines; and the Government's right, in a prosecution for perjury, to use against the defendant any statement that he gives under oath.

Id.

9

Because the movant asserts in his petition that counsel rendered ineffective assistance, this Court's analysis begins with the familiar rule that the Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defense." U.S. CONST. amend. VI. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that his counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Id. at 689. This two-part standard is also applicable to ineffective-assistance-of-counsel claims arising out of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 57-59 (1985).

Generally, a court first determines whether counsel's performance fell below an objective standard of reasonableness, and then determines whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Padilla v. Kentucky, ___ U.S. ___, ___, 130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010). In the context of a guilty plea, the first prong of Strickland requires petitioner to show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases, while the second prong requires petitioner to show a reasonable probability that, but for counsel's errors, he would have entered a different plea. Hill, 474 U.S. at 56-59. If the petitioner cannot meet one of Strickland's prongs, the court does not need to address the other prong. Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1100 (11th Cir. 2007); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

However, a defendant's sworn answers during a plea colloquy must mean something. Consequently, a defendant's sworn representa-

10

tions, as well as representation of his lawyer and the prosecutor, and any findings by the judge in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). See also Kelley v. Alabama, 636 F.2d 1082, 1084 (5th Cir. Unit B. 1981). Moreover, a criminal defendant is bound by his sworn assertions and cannot rely on representations of counsel which are contrary to the advice given by the judge. See Scheele v. State, 953 So.2d 782, 785 (Fla. 4 DCA 2007)("A plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case. What is said and done at a plea conference carries consequences."); Iacono v. State, 930 So.2d 829 (Fla. 4 DCA 2006)(holding that defendant is bound by his sworn answers during the plea colloquy and may not later assert that he committed perjury during the colloquy because his attorney told him to lie).

As will be demonstrated in more detail *infra*, the movant is not entitled to vacatur on any of the claims presented. When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the petitioner due process of law. The petitioner therefore is not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d 699, 704 (9 Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the petitioner's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

11

IV.   Discussion of Issues on Remand

As is stated above, the following three claims are currently at issue. Ineffective assistance of counsel for:

>   (1) Failing to recognize and to advise De La Rosa that he would be subject to additional imprisonment while awaiting deportation;
>
>   (2) Failing to recognize and to advise De La Rosa that he would be subject to automatic deportation if convicted of a crime for which the possible sentence exceeded one year; and
>
>   (3) Failing to negotiate a more favorable plea agreement.

De La Rosa, 2012 WL 974981 at *2.

Under the first two claims, De la Rosa appears to be attempting to apply the principles in Padilla v. Kentucky, 130 S.Ct. 1473 (2010) retroactively to his case.  In Padilla, the United States Supreme Court held that "counsel must inform her client when his plea carries a risk of deportation," and that the failure to do so constitutes deficient performance under Strickland. 130 S.Ct. at 1486. The Court did not explicitly address whether Padilla is retroactive. However, it stated "[i]t seems unlikely that our decision today will have a significant effect on those convictions already obtained as the result of plea bargains ... [because] [f]or at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea." Padilla, 130 S.Ct. at 1485.

The Eleventh Circuit held on May 1, 2012, that while Padilla announced a new rule of constitutional law, Padilla did not

announce a "watershed" rule of criminal procedure and was, therefore, not retroactive under the Teague analysis. The Eleventh Circuit, therefore, dismissed movant's §2255 motion as untimely. Fiquereo-Sanchez v. U.S., --- F.3d ----, 2012 WL 1499871 (11th Cir. 5/1/2012). On May 9, 2012, the United States Court of Appeals for the Fifth Circuit in United States v. Amer, ___ F.3d ____, 2012 WL 1621005, joined the Circuits holding that Padilla v. Kentucky does not apply retroactively. The Court of Appeals also noted that the Supreme Court has granted cert. to address the matter in Chaidez v. United States, 655 F.3d 684, 694 (7th Cir. 2011), cert. granted, 80 U.S.L.W. 3429 (U.S. Apr. 30, 2012) (No. 11-820).

The law is clear that a criminal defendant is entitled to the effective assistance of competent counsel before deciding whether to plead guilty. Padilla v. Kentucky, 130 S.Ct. 1473, 1480-81 (2010); See Lloyd v. McNeil, 2009 WL 2424576 (S.D. Fla. 2009) (defendant has the right to competent advice regarding the choice to accept a plea or go to trial). Advice regarding deportation "is not categorically removed from the ambit of the Sixth Amendment right to counsel," accordingly, Strickland applies to such claims. Padilla, 130 S.Ct. at 1482.

Under the **first two claims**, the movant argues that his attorney failed to warn him that after he served his sentence, he might be taken into custody by immigration officials and ultimately deported. (Cv DE# 1, p. 19-21). Review of the change of plea proceedings reveals that the court conducted a thorough, lawful Rule 11 proceeding. (Cv-DE#18-1; Change of Plea Transcript).

At the outset of the colloquy, the movant acknowledged under oath and through a translator, that he had discussed the nature of the charges, had adequate time to confer with counsel as to those

charges, and had read and discussed the factual proffer and plea agreement with counsel prior to signing. (Id. at 3-4). The court advised and the movant acknowledged understanding the nature of the charges, and the potential sentences for each charge. (Id. at 4-6). The prosecutor then read the elements of each offense and the facts which De La Rosa was admitting. (Id. at 6). The movant expressly agreed with the prosecutor's statement. (Id.). The court then asked defense counsel what steps he took to familiarize the defendant with the charges. Counsel stated that he met with De La Rosa three or four times and that an interpreter was present during each consultation. (Id. at 6-7). They discussed how De La Rosa came to the United States and his prior criminal record in New York. (Id. at 7). They discussed the possibility of proceeding to trial on count 4, but decided to abandon his potential defense to the aggravated identity theft charge and enter a guilty plea. (Id.). After counsel finished speaking, De La Rosa agreed that counsel had made an accurate statement regarding their consultations. (Id.).

The movant next acknowledged discussing with his attorney how the U.S. Sentencing Guidelines might apply in this case. (Id. at 8). He confirmed that his sentence would not be determined until after a PSI was prepared and the advisory guideline range computed. (Id.). The movant further acknowledged that the court may depart from the applicable advisory guideline range and impose a sentence that is either more or less severe than the guideline sentence. (Id. at 13). The movant agreed that the court was required to consider the advisory guideline sentence, but was not bound to impose such a sentence. (Id.). Rather, he acknowledged the court was permitted to impose a sentence that is more or less severe than the recommended guideline range, and in fact, the court had the authority to sentence him up to the statutory maximum. (Id.). At

14

this point in the colloquy, the following exchange took place:

> **THE COURT**: Do you understand if you are not a United States citizen, that this plea may result in your deportation?
>
> **DE LA ROSA**: Yes, sir.

(Id. at 9).

Next, the movant confirmed that he understood the terms of the written plea agreement, and that it represented the entire agreement between the parties. (Id.). The movant denied being forced, threatened or coerced into changing his plea. (Id. at 9-10). He stated that he signed the written plea agreement and the factual proffer, after each was read to him in Spanish. (Id. at 13). He acknowledged and agreed with the factual proffer. (Id.).

The movant also confirmed knowing that by entering into the plea he was waiving his constitutional rights which included, but were not limited to, the right to a jury trial, to confront and present witnesses, to testify or not on his own behalf, and the right to file a direct appeal of the sentence imposed unless the sentence exceeded the maximum permitted by statute, or was the result of an upward departure and/or variance from the guideline range the court establishes at sentencing. (Id. at 10-13).

Even assuming counsel misadvised De La Rosa as he claims, movant became aware of the possibility that an adjudication of guilt can affect his immigration status and/or his ability to remain in or return to the United States, and could in fact lead to his removal or deportation from the United States when the Court specifically advised movant of this fact during the plea colloquy. See Id. at 9). Movant stated he understood and nevertheless entered

15

his guilty plea. See generally Blackledge v. Allison, 431 U.S. 63, 74 (1977)(defendant's declarations in open court during the plea colloquy carry "a strong presumption of verity"). Accordingly, the Court cured any error due to counsel's alleged misadvice and movant's plea was voluntarily entered with full knowledge of its possible deportation consequences. See United States v. Wilson, 245 Fed. Appx. 10 (11th Cir. 2007) (even if counsel was deficient in advising defendant of possible sentencing implications of guilty plea, defendant could not establish prejudice where the district court cured any error by explaining the consequences in detail before accepting the plea); see also United States v. Perez, 2010 WL 4643033 (D.Neb. Nov. 9, 2010) (even if Padilla applies, the court is not convinced the defendant could establish prejudice where two prior charges would likely be reinstated and defendant could well be subject to deportation without the federal conviction at issue); Amreya v. United States, 2010 WL 4629996 (N.D. Tex. Nov. 8, 2010) (movant failed to show prejudice where the trial court advised him of the possibility of deportation as the result of his plea and he testified he understood that consequence); Brown, 2010 WL 5313546 (same).

Furthermore, a defendant's sworn answers during a plea colloquy must mean something. Consequently, a defendant's sworn representations, as well as representation of his lawyer and the prosecutor, and any findings by the judge in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). See also Kelley v. Alabama, 636 F.2d 1082, 1084 (5th Cir. Unit B. 1981). Moreover, a criminal defendant is bound by his sworn assertions and cannot rely on representations of counsel which are contrary to the advice given by the judge. See Scheele v. State, 953 So.2d 782, 785 (Fla. 4 DCA 2007)("A plea conference is not a meaningless charade

16

to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case. What is said and done at a plea conference carries consequences."); Iacono v. State, 930 So.2d 829 (Fla. 4 DCA 2006)(holding that defendant is bound by his sworn answers during the plea colloquy and may not later assert that he committed perjury during the colloquy because his attorney told him to lie).

Moreover, as indicated above, Movant assured the Court during the change of plea proceeding that he was fully satisfied with the representation and advice given to him by counsel in the case which necessarily included counsel's representation during the pre-plea stage of the case and any challenges to the crimes charged. De La Rosa advised the Court that the proffer was accurate and unequivocally admitted that he was in fact guilty of the offenses detailed in the proffer. (Id. at 13). Again, such sworn statements made in connection with the entry of the guilty plea carry a strong presumption of truthfulness and pose a formidable barrier in subsequent collateral proceedings. See e.g., Blackledge, 431 U.S. at 74.

Under the **third claim**, De La Rosa asserts that counsel provided ineffective assistance of counsel when negotiating the plea agreement with the government. (Cv DE# 1, p. 21). Specifically, De La Rosa argues that counsel should have insisted on a provision in the plea agreement which would have prohibited automatic deportation. (Id.).

A criminal defendant does not have the right to obtain a plea agreement with terms tailored to his liking. Rather, the decision of whether to offer a plea agreement and what terms to include in that agreement are matters of prosecutorial discretion. See

17

Weatherford v. Bursey, 429 U.S. 545, 561, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) ("[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial."); see also United States v. Rankin, 572 F.2d 503, 505 (5th Cir. 1978)(stating that "there is no constitutional right to plea bargain.")(citing Weatherford v. Bursey, supra); see also c.f. United States v. Orozco, 160 F.3d 1309, 1316 (11th Cir. 1998)(stating that "[d]etermining whether a motion for reduction of sentence will be filed is reserved to the government.").

De La Rosa fails to establish prejudice. See Strickland. It is highly unlikely that the government would have agreed to a provision prohibiting deportation, even if such a provision was requested by defense counsel. Accordingly, De La Rosa cannot establish that but for counsel's failure to negotiate as De La Rosa now sees fit, the outcome would have been different.

## V. Conclusion

It is therefore recommended that this motion to vacate be denied and the case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 17th day of September, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

```
cc:   Vertilio De La Rosa
      06499-265 / ME-403-L
      McRae Correction Facility
      P.O. Drawer #30
      Mcrae City, GA 31055

      Kelly S. Karase
      United States Attorney's Office
      99 NE 4 Street
      Miami, FL 33132
```